UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| RANBAXY LABORATORIES, LTD. and RANBAXY, INC., <br><br> Plaintiffs, <br><br> v. <br><br> SYLVIA MATHEWS BURWELL, in her official capacity as Secretary of Health and Human Services; <br><br> MARGARET HAMBURG, MD, in her official capacity as Commissioner of Food and Drugs; and <br><br> UNITED STATES FOOD AND DRUG ADMINISTRATION, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )  Civil Action No. 14-cv-01923-BAH |

## Declaration of John Kovaleski

1. I, John Kovaleski, submit this Declaration on behalf of IVAX Pharmaceuticals, Inc. ("IVAX"), and Teva Pharmaceuticals USA, Inc. ("Teva USA") (collectively, "Teva"). This Declaration is based upon my personal knowledge, my experience in the pharmaceutical industry and at Teva, and information provided to me by others within Teva and affiliated companies.

2. I am Senior Director for Product and Portfolio Management at Teva USA. I have been in this role for two years. Prior to this role, I served as Senior Director for Regulatory Affairs and Senior Director for Analytical Research and Development.

3. Teva and its affiliates manufacture and sell finished pharmaceutical products for human consumption. Teva USA, a parent company of IVAX, has the most extensive product portfolio of generic drugs in the United States.

4. Teva and its affiliates regularly file applications with the federal Food and Drug Administration ("FDA") to market prescription drugs in the United States. Where Teva is seeking to market a generic version of a brand-name drug, it typically files an abbreviated new drug application ("ANDA") with FDA.

5. AstraZeneca is the sponsor of the new drug application ("NDA") authorizing the sale of brand-name Nexium® in the United States. AstraZeneca also holds several patents covering Nexium®, the last one of which will expire in 2018. *See* Orange Book: Approved Drug Products With Therapeutic Equivalence Evaluations, available at http://www.accessdata.fda.gov/scripts/cder/ob/docs/patexclnew.cfm?Appl_No=021153&Product_No=001&table1=OB_Rx.

6. Nexium® has been on the market since 2001 and is the second-highest selling drug in the United States. According to AstraZeneca's annual report, the drug generated more than $3.8 billion in sales in 2013 alone. There are currently no generic versions of the drug available on the market.

7. Generic drugs produce significant consumer savings, over $200 billion annually. The overwhelming majority of those savings come from the launch of new generic drugs. *See* Generic Pharmaceutical Association, Generic Drug Savings in the U.S. (5th ed. 2013), *available at* http://www.gphaonline.org/.../2013_Savings_Study_12.19.2013_FINAL.pdf. Prices generally decrease with every new generic entrant on the market, and when one generic seller enters, the brand-name drug company may also market an authorized generic version of the drug. Patients also generally pay lower premiums for generic drugs, resulting in considerable savings.

8. On November 25, 2005, Teva filed an ANDA to market 20 mg and 40 mg strengths of esomeprazole magnesium delayed-release capsules, a generic version of the brand-name drug Nexium®.

9. Although the last patent on Nexium® will expire in 2018, Teva is licensed by AstraZeneca to sell its generic version of the drug prior to patent expiry, removing any potential patent block to Teva's sales of esomeprazole.

10. At least two other companies (Ranbaxy and Dr. Reddy's) have also been licensed to sell generic versions of the drug prior to patent expiry, but, to the best of my knowledge, no company other than Teva has been granted final marketing approval by FDA. Ranbaxy has previously announced that it had obtained tentative approval and presumptive first-filer status (and related 180-day generic drug marketing exclusivity) for esomeprazole, but FDA revoked that tentative approval in a November 4, 2014 letter.

11. On January 26, 2015, FDA granted final approval to Teva's ANDA. *See* Ex. A (Letter from William P. Rickman, FDA, to Rich Leone, dated Jan. 26, 2015). FDA's January 26 letter also states that FDA has determined that Ranbaxy has forfeited its eligibility for 180-day generic drug exclusivity under section 505(j)(5)(B)(iv) of the Food, Drug, and Cosmetic Act. These actions removed any regulatory block to Teva's sale of generic esomeprazole.

12. I understand that, in this action, Ranbaxy seeks a preliminary injunction (a) reinstating tentative approval for its generic esomeprazole ANDA, (b) awarding Ranbaxy first-filer status for esomeprazole (a status that would award it 180 days of generic marketing exclusivity for the drug), and (c) rescinding any other grants of final approval to other esomeprazole ANDAs. If accepted, the relief Ranbaxy seeks will block Teva's launch of generic esomeprazole for at least 180 days following any final FDA approval of Ranbaxy's ANDA and

is likely to block Teva's launch indefinitely. That is because there is no date certain for any final approval and launch of Ranbaxy's ANDA due to Ranbaxy's inability to demonstrate compliance with FDA statutory and regulatory requirements. Thus, the orders Ranbaxy seeks through this action would effectively indefinitely block Teva's launch of generic esomeprazole.

13. Teva and its affiliates involved in manufacturing and marketing generic esomeprazole will suffer considerable financial losses if Ranbaxy's position were to prevail. Given the extraordinarily high demand for Nexium®, Teva must produce a large amount of its generic esomeprazole in a short period of time to successfully launch its generic. That requires a great deal of planning, including negotiating with customers, taking other drugs offline, putting operations into place, and preparing manufacturing facilities for production. Teva has already begun this process. A preliminary injunction will require a halt to this considerable effort, and, combined with a later reversal, will require a much more costly and inefficient launch process. That will result in losses and may impair Teva's ability to capture the market share it otherwise would have achieved. It will also result in needless disruption of Teva's relationships with its customers. Teva estimates those losses may range from millions to hundreds of millions of dollars per month.

14. Consumers will also lose significant cost-savings if Ranbaxy's position prevails. At present, there is no way of knowing when or if Ranbaxy will ever be able to commercialize generic esomeprazole. The relief Ranbaxy seeks would continue to postpone any launch of generic esomeprazole until an uncertain date in the future.

15. Teva and its affiliates do not expect to be able to recover their losses. I understand that monetary losses resulting from this proceeding will not be recoverable from FDA. Any damage to customer relationships resulting from the disruption in its production and

4

Case 1:14-cv-01923-BAH   Document 73-2   Filed 02/02/15   Page 5 of 5

launch schedule will likewise not be recoverable. As a result, even if the courts ultimately uphold FDA's decision to rescind Ranbaxy's tentative approval for its esomeprazole ANDA, Teva and its affiliates will not be able to recover its losses from the preliminary injunction Ranbaxy seeks.

I, John Kovaleski, declare under penalty of perjury that the foregoing Declaration is true and correct to the best of my knowledge.

Dated: January 29, 2015

John Kovaleski
Senior Director, Product & Portfolio Management
Teva Pharmaceuticals USA, Inc.
North Wales, Pennsylvania

5